Next case will be 07-1038. Shake approved assembly of components in the United States. Next case will be 07-1038. Good morning, my name is Emily Lawson and I am in turning with White and Case here today on behalf of defendant appellant, Hong Shou's Spring-Watcher Company. I would like to reserve 3 minutes for rebuttal. Because commerce found in this case that China is a non-market economy country, commerce applied the factors of production methodology to calculate normal value in the anti-democracy model. The factor of production central to the discussion here is the zinc plating applied to certain lock washers. The issue in this case that I will begin with involves the agency's request and the lower court's decision to grant remand for commerce to reconsider a method it had applied throughout the entire review proceeding to value this very factor. And one I submit was supported by the record evidence at the time the method valuation decision was made. Remand to the agency is not automatic. The request by commerce for remand in this case was an abuse of discretion and not in accordance with the law. And the lower court's decision to grant remand perpetuates this abuse of discretion. Commerce and the CIT, the Court of International Trade, relied upon the decision of SKF USA versus the United States at 2-54-F-3-1022 as the legal basis for remand to commerce to reconsider the final results without confessing error. Initially, SKF, as we have stated in our briefs, is not applicable to this case because the reliance on it is not proper. As we state in our brief, unlike an SKF, commerce's remand request in this case is not being made so it may confer a benefit on a party who has duties imposed on the merchandise. There should not be equal treatment of remands, I argue, benefiting petitioner and respondents where the remand request is made in response to political pressure, such as this case here where there is documented post-final determination political maneuvering that took place by the petitioner and Congress members on petitioner's behalf. The CIT has questioned in the court's cases we cite in our briefs the application of equal treatment, and particularly in a case where it appears commerce's request for the remand was made in direct response to political pressure from the domestic industry as well as members from Congress. Can you show us a – with respect to political maneuvering, as you have phrased it, it would suggest that the political maneuvering was in any way inappropriate or improper. I would submit that in a lot of cases there is some political interest. You have politicians that are interested in the activities of their constituents and doing what they can to make sure that the interests are protected. One could characterize that as maneuvering, but I mean here there was arguably a basis for the request for remand. And even though it might have been influenced by some political involvement, what suggests that that's in any way improper? Well, I guess I would respond to that in two ways. The first being that the Department of Commerce has a statutory and regulatory time period to do reviews. And within this time period, all parties, including the petitioner, are able to respond to the department, make any arguments. You're making political maneuverings, as you say, during that period of time. But the time period – actually, the lower court did use this expression, too, and did say that it was concerned about this document of political maneuvering that took place. But there is a time period for that. And in this case, it was not done until after that time period had closed, after the department had made its final determination. And I submit that if you look at the record evidence, as the record was before the department, when it made the original determination, its determination was supported. And Commerce continued to support that determination it made, even in response to comments that the petitioner, Kate Brink, had filed after the final result. It wasn't until they were contacted by the petitioner, met with the petitioner's counsel, contacted by the Congress members, that the department decided to change its position here, or to reconsider, rather, the decision it had made, and was supported by the record evidence. But it had a reason for changing its position. It thought that it had made a mistake. That is what the department argues. But again, we believe that from the record evidence, in what the sequence of events – and to say that there maybe was a mistake – was influenced by the petitioner's lobbying to the department. And I think – well, there is a standard that this court has even said that the department or agencies must meet in order to get a remand. As I just stated, a remand isn't automatic. A remand must be for legitimate and substantial reasons. We argue here – Didn't your client essentially and ultimately agree that it was a legitimate reason to go back and recalculate this on the basis of plating materials instead of the lock washers themselves? The court is right in saying that. But the difference is that that decision was made on redetermination when the department had reopened the record, gathered new evidence, and it was based on a completely different record that was before the agency than the one that they had relied upon at the original time they made this determination. And I think one important factor to point out here is that during the prior segment of the review – and we do explain this in comments that we submitted to the department – the department didn't ask for this information about the weight of plating. They asked about it in the 10th review because they were aware of, after using the surrogate value of the plating services price quote, in the 9th review, they were aware about this issue and specifically asked Hongzhou for this information about the plating weight. And at no time did the petitioner comment about that during the normal proceeding. They didn't comment about it when the department applied it in the preliminary determination. And that is the appropriate time period to do so. And they have up until the case brief time period before the final results are made to comment. And no time did they do that. You know, on this political appearance that you discussed, wasn't all of that presented to the trial court? And wasn't even in the papers when they made that complaint? Yes, and I would say – And considered by the court, they may or may not have liked it, but didn't find anything nefarious about it or illegal. Well, the court did state that it remained troubled when it remanded the decision back to the commerce by what may be fairly characterized as the appearance, if not existence, of improper political influence on an administrative discrimination. So the court was concerned with this. But it seemed to find some basis for establishing the department had established a legitimate or substantial basis for remand. And under this court's standard in SKF, we do not think, and I see it here, that they have not – commerce has really not met that standard. The record evidence at the time the department made this determination supported their decision. The political influence that we suggest in arguing our briefs did cause them to change their minds, or rather reconsider or ask to reconsider the decision. But then also, the piece of evidence, as we explain in our briefs, that the Department of Commerce, as well as the court, relies upon to show that there was this difference between the Ninth and Tenth Review, wasn't before the Department of Commerce at the time it was making its decision. And it also – and so, therefore, the court, in relying upon it, was relying upon evidence that wasn't before the Department of Commerce. And the standard is to review the evidence and the record as it was before the department when it made its determination. But overall, it was within the statutory authority to proceed as they did, correct? We – I guess we would say that it is the – the department has not established that they have a legitimate or substantial basis for remand. And you don't think your client's basic agreement that the methodology was incorrect legitimizes the remand? No, I think they are two separate proceedings. And I think the standard of review that this court has allows it to look at the decision as it was before the – as it was first before the court and as it was before the Department of Commerce. Aside from a subsequent proceeding where the department reopened the record, had new information. And it is a different determination. It is a redetermination relying upon different and separate evidence that wasn't before the Department of Commerce at the time it made that determination. And again, I think the standard of review that this court has allows it to look at those two separate proceedings. But also in looking at – in responding to your question about the change in the determination as a result of the department's redetermination, as a result of this new evidence before them, in the alternative, I submit that Commerce's redetermination on remand is not legally valid. Commerce's decision to reject the price quotes submitted by Concho because of alleged questions concerning the application basis of the price quotes is unsupported because it is inconsistent with the department's redetermination and it ignores record evidence. Commerce's review of this usability or credibility of the price quotes was done in an arbitrary and capricious manner. In the redetermination on remand, Commerce utilized only the single price quote offered by Schafer. We have set forth in our brief why the reasons the department claimed in the remand themselves to reject the price quotes that were submitted by Concho are unsupported. And here we would like to focus on the fact that in the remand proceeding, the record before Commerce established that it was standard industry practice, as they determined with this new evidence that was on the record of the redetermination, for plain services price quotations to be applied on a per kilogram with unplated block washer basis. And in rejecting the price quotes submitted by Concho because of alleged questions about the application, Commerce completely ignored its own determination. Any question about the application of the quote should be inconsequential considering the department's redetermination and the record it relied upon to support that. In the remand proceeding, Commerce had asked not only for questions about how the price quote that they used during the preliminary determination was applied, they specifically asked the parties for industry standards for providing quotes on zinc plating. Commerce relied upon this industry practice information it had received in its redetermination, and it stated so. In the remand evidence which Concho has detailed in this brief establishes this industry practice, and the record includes, among other information, evidence of three affidavits that the petitioner had submitted from industry experts stating that this was in fact the industry standard. In the remand results, the Commerce stated that it weighed all the evidence on the record to make its decision, and I submit that all the information includes the information the department requested on this industry standard, and the industry standard as an industry standard doesn't just apply to the price quote submitted by the petitioner, but also applies to all the price quotes. Would you like to say anything more? Sure, I'll do that. Thank you very much. May it please the Court. This Court should affirm the trial court's decision affirming the remand determination because the remand was properly granted, and the remand determination is supported by substantial evidence. With respect to the propriety of the trial court's order granting the voluntary remand, Concho misstates the standard for evaluating this determination. In SKF, the Court laid out several scenarios under which the Court would be able to grant a remand, and with respect to the fourth criteria, it specifically indicated that the government may seek a remand without confessing error to reconsider its position even in the absence of intervening events, and in doing so, it identified several examples of when it would be able to do that, and one of the identified examples was whether there would be doubts about the correctness of the decision, and contrary to Concho's position, the Court in SKF did not limit the basis for a remand to scenarios where there was a confession of error or a change in policy. In this case, the specific request for a remand was on the basis that there was a departure from a methodology that had been used in the previous review, and Commerce had not explained its departure, and all parties agreed that Commerce did deviate from that methodology and that it failed to provide an explanation for such departure, and those are the reasons for the remand. In contrast to Chorus 1, upon which Concho relies, it wasn't a mere scenario of a blank check that was being sought by Commerce where they just wanted to reconsider the determination. The Court in Chorus 1 specified that where there's a request for a remand, it must give its reasons, substantive reasons, and that's the basis for the substantial and legitimate standard that was applied in SKF, and in this case, because all parties agreed that there was a departure from a previous methodology and that Commerce had failed to give its explanation for that departure, that's the substantive reason for the remand. All the allegations regarding bad faith omit that the Department of Justice is making the determination whether to seek a voluntary remand or not. Commerce can recommend a voluntary remand, but ultimately it's the Department of Justice that makes that determination, makes its own independent analysis of that determination, and the guiding principle for those scenarios would be whether the path of reasoning is discernible. This Court has held numerous times that Commerce need not explain its reasoning for every possible issue as long as its path of reasoning is discernible by the Court, it can be sustained. In a circumstance such as this where there is no explanation whatsoever, the Department of Justice makes an analysis of the determination to see whether the path of reasoning is discernible, and in this case, there was no explanation, and therefore that was the basis for determination. The Court need not require and Commerce need not admit error in order for there to be a remand. The second infirmity with Hangzhou's argument is that by admitting that the methodology that was employed in the remand determination was proper, Hangzhou is waiving its rights to request that the order remanding the determination for further analysis be vacated and that the original determination be reinstated, because there's nothing left to argue about because the principal reason for the remand was the methodology itself, and now that all parties are in agreement that that methodology is proper, it serves no purpose to remand where that point is now moved. With respect to the substantial evidence underlying the remand determination, there are two principal issues here that Hangzhou fails to comprehend. The fact that it admits that the Sudha information submitted by ShapeProof was contemporaneous, and the fact that it admits that the information submitted from Sudha by ShapeProof was reliable, that ends the inquiry. We shouldn't be here because the standard of review for the selection of a surrogate value is whether the selection was made in a reasonable manner on a case-by-case basis. In Appellant's reply brief, they indicate that their alternative sources of information were appropriate, and that misstates the standard. It's not whether there could be another way of skinning the cat, or whether there might be another mode of analyzing it. This court reviews Congress's surrogate value selection to determine whether the manner and the source selection were reasonable, and in this case, because all parties agreed that the source selection itself was reasonable, ends the inquiry. To the extent that Hangzhou argues that there was disparate treatment in relying upon the quote that was provided by ShapeProof, even though in previous instances it relied on post-period of review data, misses the mark. In certain circumstances, Congress has relied on post-period of review data. That is not to indicate that there is a prior practice of doing so. Indeed, Hangzhou admits that the policy bulletin 041 indicates that there is a preference for contemporaneous data and source selection, and so if that's the case, then that ends our inquiry, because in this case, all parties agreed that the Suk Hop quote was contemporaneous, whereas the quotes provided by Hangzhou were not. The only instances where Congress does rely on post-period of review data is when it is forced to do so. It resorts to that data because of a lack of other evidence or other sources. And for these reasons, we request that the court affirm the trial court's decision affirming the remand determination. Thank you. Thank you, Your Honor. Mr. Ely? Yes, Your Honor. I wanted to figure out if this was also, obviously, wrong all along. Why did it take a lot of meanwhile? There's no clause or whatever to get the process restarted. Well, I wish I had a better answer for that than anti-dumping cases are complicated. Petitioner went through the review and only realized timely, but late in the proceeding, that this very specific calculation of the plating costs was done incorrectly. We raised it in a timely manner during the final disclosure process. Frankly, we considered it to be a ministerial error because of the way the calculation was done incorrectly. The Congress department disagreed with that, which is why we interrupted the court. But it was after the proceeding was through the investigation or through the review stage, but still within a timely manner during this final disclosure period that we pointed it out to the Congress department. Frankly, the details of the calculations based on proprietary information are not visible directly by our client itself. It has to go through counsel. We were actually retained late in the proceeding. We discovered it, again, during a timely phase and presented that to our client as whether or not that calculation was done correctly or not and realized in comparison to the way the calculation based on the same pricing information had been done in the prior review, we pointed that out to the Congress department, which realized that the mistake had been made. I don't disagree with you that these kinds of calculations are complex and detailed and not necessarily readily apparent. That also strikes me as being an odd thing that might attract the attention of anybody in politics. What attracted the attention of counsel and, as you put it, the members of Congress, whose constituent is Shapeproof Division of Illinois Tool Works, was the impact on the final results of this review, not the discrete calculation. I can assure you that a member of Congress would not understand or not care about that discrete calculation, but the impact that discrete calculation had on the final results here, changing it from a zero anti-dumping duty margin to a nearly 20% anti-dumping duty margin, has a significant impact on the imports and, as a consequence, on the business of Illinois Tool Works. That's what attracted the attention. And I might add that the notion that political maneuvering occurred or that there was influence being brought to bear on the Congress department is far from the truth. As you noted, the members of Congress, whose constituent is Shapeproof Division of Illinois Tool Works, were very concerned with the impact on the company this error would have. But they simply, as I did myself, contacted the Congress department to find out what process could be undertaken to make sure that mistake was corrected and the correct result could be then implemented. Counsel for the government actually has stolen my thunder and presented most of the arguments that I had intended to make myself and did so very well. If there are no other questions, I simply ask that the Court confirm the lower court's decision. I just would like to point out again that at the time that this decision, at the time the department requested the lower court to grant and to remand to reconsider the decision, it wasn't so obvious that their original determination was wrong. They asked the court to reconsider their determination after talking to the petitioners' counsel after the final review had been and the record for the review had been closed. It required them to reopen the record, ask for additional information, reconduct the determination on this new record evidence to make a different determination. At that point in time, they decided from the record evidence, the new record evidence, what was the most accurate method to apply the pleading weight. This is the record evidence, the evidence as it was before the Department of Commerce that the court should look at and looking at the appropriateness of the remand. The original record did support their determination and considering the political influence or the lobbying that the petitioner conducted after the appropriate time to comment on the department's determination, the remand request is not substantial and legitimate. This is why even though the government said here that this case or the issue is moved, this is why it's not. Again, the standard review allows the court to look at the issue as the lower court did. And as far as just commenting quickly on the representativeness issue, Commerce does consider contemporaneity as an issue in valuing a surrogate value, but Commerce also has a practice of looking at values that are publicly available information representative of the industry norm, and I submit that using one single price quote, one single price quote as representative of any industry norm is not reasonable, particularly for the Department of Commerce has used post-review data before, and it did so in a prior review. In this case, there was reason to use more than one single price quote because it had those available to it. Thank you.